Good morning, Your Honors. My name is Marjorie Bronster, and I, along with my colleague Robert Hatch, represent Alexandra Gregg, who individually and as a proposed class representative. I would like to reserve five minutes of my time. When Alexandra Gregg was an inmate at KCCC, she was there on and off up until November 2011. She was subjected to discrimination, retaliation, and a variety of constitutional deprivations that resulted in a severe psychological injury. The court below found that all of her various claims were time-barred because they were not brought within two years from the time that she was released from KCCC. Now, what we do agree with the State on is that the applicable statute of limitations is two years for each of her claims. The place where we have a serious disagreement, both with the State and with the court below, is when those claims accrued. And at this point I'd like to pause and address the specific question that the court asked us to be prepared to discuss, and that was whether the separate causes of action for psychological injury versus the gender discrimination and retaliation claims have different accrual times. And we would state that, yes, they do. And I believe that it's possible that the reason that the court below got it wrong was because that distinction may not have been made below. We believe that the gender discrimination claim, whether women were entitled to participate in the work furlough process, did have a two-year statute of limitations and did accrue prior to the time that Ms. Gregg left KCCC and is time-barred. Which claim was that? That was the third claim? No. Well, a lot of the claims include multiple allegations, but we believe that the gender discrimination claim would be the second claim in part. So you're conceding that that would be time-barred? Yes. And I think what happened was that when we talked about the various accrual times, a lot of the cases deal specifically with different types of claims. And the Abramson case was a case involving Title VII. And the Abramson case specifically said that you look at the accrual as at the time of the actions, not at the time of a potential injury. All right. What is your analysis on the retaliation claims? With respect to the retaliation claim, again, we believe and would concede that that, too, was time-barred. Because when Ms. Gregg complained and there was an action taken where she went back into the modules and was removed from the better location in the lifetime standards, and program, she knew that, or should have known at that time, that the program that she was retaliated against for speaking up, that would be her First Amendment claims as well. And we agree that that would be time-barred. So what's left is the psychological injury claim. Yes. Which you argue accrued when she consulted a therapist and basically learned that this is what the incidents that occurred caused her psychological injury. Yes. And I think when you look at the various claims and the types of cases that talk to a delayed accrual, I think that the psychological injury claims most closely fit in with the Simons case. And I think when the lower court determined that she knew what had happened and she knew the injury and she knew the cause, I think that those statements might work for the discrimination claims, but they certainly didn't work for the psychological injury claims. And quite frankly, when you look at a psychological injury, we did not find any case that came up with a similar fact pattern where the type of psychological injury that she suffered, in this case it was a PTSD-type disorder, she had no reason to believe that her discomfort of having to undergo and endure this so-called therapy given by someone who was not a therapist, being forced to relay her sexual history in front of men and women in a program that was run, that was supposedly therapeutic, and she later learned caused more harm than good, she had no reason to believe that at the time that she was incarcerated at KCCC. When she got out of KCCC, she first went to the federal detention center, and she got out in the spring of 2014. It was only after she got out in the spring of 2014 that she spoke to a social worker, she began to understand that perhaps her injury or her feelings needed professional help, and she did bring suit within two years of when she first began to believe that she had any psychological injury. So Ms. Gregg actually knew about the acts. She knew what had happened in terms of what she had endured at the prison itself, but she did not understand, and she did not know what the injury was, nor did she understand what the cause of that injury was. When she got out, and this is outlined in the declaration that we submitted in order to request the right to amend, and the court did look at her declaration for purposes of determining whether or not she had the right to amend, she stated that when she got out, she went and spoke to a social worker, a social worker who had been affiliated with KCCC, and it was the social worker who encouraged her to go and seek psychological help. And we believe that at the time that she went to see the social worker, she may have been put on notice that it was time to get diligent about going and getting the psychological help, and it was within two years of seeing the social worker that she did file the lawsuit. And I think that the Simmons case actually does talk to the issue of whether or not the delay was reasonable. Was it reasonable for her to have delayed seeking the psychological help? And I think given the circumstances and the chronology here, it was absolutely excusable. This wasn't a situation where she was in a sexual relationship, as in Simmons, where the delay in seeking appropriate help was because she was involved with her psychologist. This was a case where she was not given any appropriate psychological help while she was at KCCC, nor while she was incarcerated at the Federal Detention Center, but it was once she got out that she spoke to a professional, a psychiatric social worker after she got out, and she proceeded at that time to seek the psychological help. In Simmons, it was, A, a malpractice case, and it involved the special relationship of doctor-patient. So our court said this was a special kind of malpractice case where the injury and cause thereof are subtler and more complicated than the normal malpractice case. We would have to extend Simmons to support your argument, I suppose. Was there a special relationship between the warden and Ms. Gregg? Yes. Yes, Your Honor. Equivalent to the doctor-patient relationship in Simmons? We would actually say it was stronger, because not only was he claiming to be the therapist, not only was he claiming to have created a live-in therapy program, but we would allege, if we had the right to amend, we would allege that he was in complete control of the lives of all of the inmates at KCCC, and in particular, the women within the Lifetime Stand program, and that that was an even greater control and relationship than the Simmons case, involved in the Simmons case. We would also suggest that the, although it is the Seventh Circuit, the Devbro case, which we cited in our reply brief, talks to the fact that when you are looking at a, that there is no single accrual rule for 1983 actions, but that the failure, the tort claim that's most analogous to the deliberate indifference claim in a prison situation would be a medical malpractice claim. And we believe that that, although, as I said, it is the Seventh Circuit, we believe that the analysis provided in the Devbro case does suggest that the medical malpractice situation would be relevant. But even more importantly, Your Honor, I think that the fact that the warden continually said that this was a therapeutic program and that they were forced to watch these rape porn videos in order to help them through was not something that Ms. Gregg should have known caused her to suffer from a PTSD-like disorder. And it wasn't until after she got out that she had the ability to go and seek psychological testing and help from professionals where she could learn not only the acts, but the injury and what had caused it. And for those reasons, we would ask that we have the opportunity to allow Ms. Gregg on behalf of herself and the class to proceed. Good morning, Your Honors. May I proceed? Thank you. May it please the Court. My name is Marie Manuel-Gavigan, and I am representing the State Defendants in this appeal. Your Honors, the issue that is presented in this appeal is simply whether the plaintiff appellant, Alexandria Gregg, whether her claims are precluded by the statute of limitations. Now, Gregg filed her lawsuit on January 31, 2014, alleging violations of law that she says resulted from her participation in a voluntary rehabilitation program while she was incarcerated at the Kauai Community Correctional Center. She alleges that she was harmed by her participation in this program. The harm that she allegedly suffered was, and using her words, was severe depression, which she knew about prior to November 30 of 2011 when she transferred out of that facility to another jail facility, the federal facility. And so when she filed her lawsuit January 31 of 2014, this was now more than two years after the accrual of her claim, which we believe was before November 30 of 2011. So your position then is even if we adopt Simmons' application here, the severe depression is the psychological aspect beyond the injury of embarrassment and other things, humiliation and so on and so forth. That is correct, Your Honor. And if we didn't buy that, then Simmons would suggest that there may be... Well, Simmons does suggest that it's a question of fact as to when she knew or should have known of the psychological aspect. And you think that's just already clear from the record? Yes, Your Honor. We do think that it's absolutely clear from the record. And if I may, just for a moment, obviously the state does not believe that Simmons applies in this case. And I will get to that in a moment. Given that plaintiff has conceded that the discrimination claims and the retaliation claim is time-barred, I obviously don't need to discuss that. So I will discuss about the psychological injury. With regard to the psychological injury claim... I'm sorry. You said this was a voluntary program? Yes, Your Honor. It was voluntary. So she was exposing herself to this warden's program voluntarily? That is correct, Your Honor. It was a voluntary program. She couldn't leave? Well, she could leave. She agreed to go into the program, and any inmate that agrees to go into the program has to sign a contract stating that they will abide by the conditions of the program and what is involved. At any time if an inmate decides not to continue their participation, they aren't required to stay in. What was the purpose of this program? Your Honor, the program was to help the inmates to understand what they have... well, for both. For the males, especially, it was to understand if they were in there for, say, sexual assault, to understand the impact of their actions on other people. And for the females, it was to help them to try and share how they have been impacted if, again, they were sexually assaulted. So the program is to try and help the inmates to learn what they've done. Was Ms. Gregg a victim of sexual assault? Your Honor, I'm not sure that that's what she was in for, but she did voluntarily... I'm sorry, Your Honor. I don't know specifically what she was incarcerated for. What was the benefit for somebody like Ms. Gregg to voluntarily participate in this program? Did they get time off or get credit? What was the benefit from it? The benefit of any inmate going into this program is that they are in what's called less restrictive housing. What that means is in this facility they have the general housing, which is the modules, and they are not free to leave. They are incarcerated in the general. But in this program, this rehab program, they have a whole separate housing area, and it's outside of the restricted area where the modules are, so that they live in these cottages. It's up at the front of the facility, and they're free to come and go, so that if one of these inmates decided they wanted to break out, they just walk away from the facility altogether. So if she decided when she got in the program and didn't like it, she would have to give up that benefit? That is correct, Your Honor. Does the warden encourage certain people to join in this program? Your Honor, I'm not sure that he encourages certain people. He would like all people to get in, because obviously the goal is to get the inmates to understand what they did, to change their lives so that they can get out into the community and be good citizens of the community. Of course I'm not an expert in this area, but the program here kind of struck me as a little off. Your Honor, I haven't done any research on his program. I know somewhat what he does in it. I do know that it is a program that has received recognition, at least from the legislature and from others in the state, as to the value of it. For women? For all inmates, Your Honor. If a committer of sexual assault, I can understand that, because they need to understand the havoc they wreak on the victim. When you switch to the victim, that's a whole different thing. In fact, there was a Victim's Bill of Rights that was proposed. Victims of serious crimes get allocution rights. They're treated differently from offenders. Like Judge Pius, I'm having a little curiosity about the benefits. I don't want to deprive you of time to address Simmons. Your Honor, if I may, just to follow up on that, no inmate, no female, is forced to stand up and talk. They're asked to. If they choose not to, they are not required to do so. But obviously the warden does want everyone to participate in the program. That's the value of it, and that's the help of it. The underlying theory here, as I think, because I think this ties into Simmons, the warden advertises this, and you say the legislature endorses it, as a beneficial program. So somebody, a woman victim, goes into it. She's in it for not being a victim. She's committed some other crime. She gets into it to get less restrictive housing benefit, and she's told that this will be good for her. And she gets into it, and she suffers humiliation, as she alleges, and embarrassment and whatever. She didn't know that this is doing arguably permanent damage in the form of PTSD. And the theory is that given the circumstances, she doesn't know that she's been injured beyond embarrassment or even maybe severe depression. I don't know. But that's the theory, which is, and this is what Simmons seems to be speaking to, until she is diagnosed by a professional who says, this isn't transitory, uncomfortable experience you went through. This is an assault of greater impact, and you have suffered more than transitory embarrassment. You actually now have a diagnosable psychiatric condition. Why doesn't that apply in this case? Why shouldn't that approach apply in this case? Because, Your Honor, the complaint alleges that in November of 2011, Greg suffered severe depression. Severe depression is a treatable mental illness, psychological illness. And severe depression is a whole lot more than feeling emotionally uncomfortable, which is what Greg's opening brief, and certainly her reply brief, seemed to indicate that she had dishumiliation, and she was degraded, and so she suffered emotional uncomfortability. But severe depression is certainly much, much more than that. It's on the level of PTSD? Your Honor, I don't know if you can compare the two. It's apples and oranges. Isn't that the point? If you can't compare them, then that's what Simmons is saying. Well, I think it's different, because you're talking about treatable psychological illnesses. With PTSD, a person can be functional or perhaps nonfunctional. With severe depression, a person can be functional or nonfunctional. It depends. But it's still a treatable psychological illness. And severe depression is nothing to just poo-poo as emotional uncomfortability. I'm not suggesting that you are, Your Honor. I'm just saying there are degrees of injury. And, for example, we know publicly that people who suffered serious problems in Afghanistan or Iraq and were severely depressed, it took the military a while to address the military issue. It was so severe that it's led to suicides. So there are degrees of injury. And that seems to me what Simmons is recognizing. And I'm wondering why you would think that we shouldn't extend Simmons to this kind of case. Because we think factually Simmons is different. Simmons is a narrow ruling, we believe, because it relates to the transference phenomenon which occurred in this case. Even if you're correct for the sake of this question, let's assume that you're correct that the allegations in the first minute complaint are deficient in terms of connecting the depression that she suffered to the cause of what happened when she was incarcerated. Why is amendment futile in this case? Was it abuse of discretion for the court to deny leave to amend so that she can flesh out this theory? No, because she knew as of the end of November 2011 that she had an injury. That is the injury that she suffered. In fact, she knew that she had that injury. But she didn't know the severity of the injury, arguably, and she didn't know the causation of the injury. She knew the causation because she said the conditions were so bad she had to get out. And that's why she requested a transfer. So she knew the injury, she didn't know the extent of the injury, but then again, if you know of the injury, that's when your statute of limitations begins to run, and you need to take action on it at that time. So sometimes people have injuries, like they might have a head injury, and they don't know there's a latent blood clot. I think that was one of the cases that we cited, or another injury that creates other problems after the statute. But they do know of that injury, and they're obligated to take action to do something about it as soon as they know. If you look at her declaration, the additional information, she says that when she got out in 2012, she looked around and talked to counselors, but then she did nothing. Later that year, she talked to the social worker, and the social worker said you had better do something. At that point, she still has more than half of a year left on her statute, and she does nothing. There's no indication of what she did between late 2012 and January of 2014 when she went to see the counselor. So she had the advice twice, and she did nothing with it. She knew of her injury. That's the point. In Simmons, it was a different matter because of the, again, the transference phenomenon. She did not know of her injury. Simmons did not know of her injury. But here, Greg knew of her injury. Your Honors, unless you have any further questions, I see that my time is up. We would ask that the Court and dismiss the appeal. Thank you. Your Honors, I believe that the State keeps repeating that she knew of her injury. Well, you did allege in paragraph 31, plaintiff became severely depressed. Yes, and when she was transferred back to the KCC modules from the less restrictive LTS housing. Yes, and while it may not have been as artfully drafted as it perhaps should have been, and what we would like to clarify is that she did not at that time believe that she had a depression. There is not a question of her state of mind. There is not an allegation that she believed she was suffering from severe depression. Instead, we believe that the allegation that goes to her state of mind at that time is more accurately looked at in paragraph 32, which says that she could not tolerate his continued harassment, sexual, psychological humiliation, and improper treatment, which goes exactly to the idea of the humiliation and the harassment, but not to a clinical determination of depression. I do know in paragraph 34 you change it a little bit and the allegation is plaintiff is psychologically at the time you were writing this. Yes. Emotionally and physically traumatized by defendant's acts and omissions against her. And, Your Honor, I think that what we, it became clear during the course of the briefing on this that this was not as artfully crafted as it should have been, which is why we went back. What do you want us to do? Do you want to have a Senate back and stand on the complaint or give you an opportunity to amend? Right. We want an opportunity to amend. And I think that the appeal was based on two points. One was when the statute of limitation accrued. And I believe that the issue here is that the court below found, as a matter of fact, that she knew not only of the acts that had occurred, but also the injury, the existence of the PTSD and what caused it. And our position is that that was wrong and that if the complaint was not artfully crafted, we should have an opportunity to reinterpose another amended complaint in order to include the time elements that we put into the declaration, both the declaration of Alexandria Gregg and the therapist about what was the injury that she suffered. And I would note that the therapist, the determination that the therapist made included a determination that this specific psychological disorder was one that had a delayed onset. And so that in and of itself would lead to the idea that she would not necessarily have known of the injury, nor would there be any way for her to have known of the injury. But when she did get out and she did start to seek psychological help, she did file within two years of that date. So we believe that the state is over-reading the allegations in the complaint, and all of those allegations have to be taken in a way most favorable to the plaintiff. And it does not say in paragraph 31 that Alexandria Gregg knew at the time that she was transferred that she was severely depressed. I mean, it is probably fair to say that a lot of people in jail suffer from depression. They don't like being in the modules where there is no freedom, and they, but that does not constitute the type of psychological injury that she was later struck with. If I may just address... Fair enough. Thank you, Counsel. We appreciate your arguments, Counsel, and the matter is submitted.
judges: Fisher, Paez, Nguyen